A04A2081. WITCHER v. LEVEL 3 COMMUNICATIONS, LLC.
(612 SE2d 816)

PHIPPS, Judge.

Level 3 Communications, LLC, a telecommunications public utility, instituted this special master proceeding to condemn an easement for construction, operation, and maintenance of a fiber optic communications system over and across land owned by Lillie Witcher. The special master awarded Witcher $963 as the value of the condemned property interest. Witcher appealed the award to superior court and filed exceptions to the award. The superior court denied the exceptions and condemned the property. At trial, the jury found

---

the value of Witcher's condemned property interest to be $3,225. Witcher appeals the judgment entered on the award. Because she has failed to carry her burden of showing error from the record, we affirm.

Witcher owns approximately 82 acres of Madison County pasture land, which she acquired from her grandmother's estate in 1990. In 1941, Witcher's predecessors in title conveyed a 30-foot easement across this acreage to Plantation Pipe Line Company. Plantation is an interstate common carrier of petroleum products. Plantation owns and operates a pipeline system through eight southeastern states, including Georgia. The 1941 easement authorized Plantation to construct, operate, and maintain a pipeline for the transportation of petroleum products. In 1968, Plantation condemned an additional 20-foot easement adjacent to the 30-foot easement. Plantation has laid three pipelines in the fifty-foot easement; one is twenty-six inches wide, one is fourteen inches wide, and one is ten inches wide; the twenty-six-inch and fourteen-inch pipelines are active (meaning they are currently being used to transport petroleum); the ten-inch pipeline is idle (meaning it is not currently being used to transport petroleum).

In 1999, Plantation entered into a license agreement granting Level 3 the nonexclusive right to use certain of its pipelines and rights of way for installation of its fiber optic communications system. Under the license agreement, Level 3 acquired the right to use the idle ten-inch pipeline that runs through Witcher's land. Level 3 had to institute this condemnation proceeding because of the change in the use of the easement from a petroleum pipeline to a fiber optic communications system. The property condemned by Level 3 is comprised of a ten-foot strip of land, consisting of five feet on either side of the center line of the ten-inch pipeline.

At trial, Witcher's expert real estate appraiser, Dr. Alan Aycock, testified that in his opinion the value of Witcher's condemned property interest is about $52,000. He derived this figure by using two methodologies, referred to as the income production method and the alternative route method. Aycock was about to testify to a third valuation method, when Level 3 objected on the ground that Witcher had not disclosed during discovery that her expert would testify on that subject. The court sustained the objection.

1. In reliance on the rule that "exclusion of probative trial evidence is not an appropriate remedy for curing an alleged discovery omission,"[1] Witcher contends that the superior court erred in excluding the testimony of her expert concerning the third valuation method.

---

[1] (Citation and punctuation omitted.) *McEntyre v. McRae*, 240 Ga. App. 148, 149 (1) (522 SE2d 731) (1999).

At trial, however, Witcher overlooked the "well settled rule that in order to preserve a ground of objection relating to the exclusion of oral testimony it is necessary for the complaining party to show what he expects to prove and that the evidence is material, relevant and beneficial."[2] Because Witcher made no offer of proof at trial, we cannot determine whether the trial court's exclusion of the expert's testimony was harmful. "In order to have reversible error, there must be harm as well as error."[3] Witcher has not carried her burden of showing harmful error.

2. Witcher charges the superior court with error in denying her exception to the special master's award on the ground that Plantation had abandoned its easement.

Witcher bases her claim of abandonment on the fact that the ten-inch pipeline being used by Level 3 for its fiber optic cable had ceased to be used by Plantation for petroleum transportation. Specifically, Witcher relies on OCGA § 22-2-85, providing in pertinent part: "Whenever the condemnor ceases using the property taken for the purpose of conducting his business, the property shall revert to the person from whom taken, his heirs or assigns."

But here, the condemnor, Plantation, acquired part of the 50-foot easement by grant and part by condemnation. Although we have not been cited to any part of the record in this case showing the precise location of Level 3's ten-foot easement, facts developed in *Plantation Pipe Line Co. v. Milford*[4] showed that, at least in Gwinnett County, Plantation installed its ten-inch pipeline in the center of its original thirty-foot easement. Without dispute, that same procedure was followed here. Thus, Level 3's easement is located within the original easement, rendering OCGA § 22-2-85 inapplicable. And even if OCGA § 22-2-85 is applicable, it was not shown that Plantation has ceased using the ten-inch pipeline for the purpose of conducting its business. In fact, it was shown in *Milford* that the ten-inch line, although not transporting petroleum, was still being used by Plantation for purposes of maintaining the fifty-foot easement.[5] Moreover, *Milford* rejected the argument that Plantation has abandoned the easement by ceasing to use one of the pipelines for petroleum transportation.[6] We have not been cited to anything in the record in this case that

---

[2] *Hendrix v. Byers Bldg. Supply,* 167 Ga. App. 878, 880 (2) (307 SE2d 759) (1983).

[3] (Citations and punctuation omitted.) *Shadron v. State,* 275 Ga. 767, 771 (5) (573 SE2d 73) (2002).

[4] 257 Ga. App. 709 (572 SE2d 67) (2002).

[5] Id. at 710.

[6] Id. at 713 (2).

provides any basis for reaching a different conclusion here. For these reasons, the court did not err in denying Witcher's exception to the special master's award.

*Judgment affirmed. Johnson, P. J., and Smith, P. J., concur.*

DECIDED MARCH 17, 2005 —
RECONSIDERATION DENIED MARCH 31, 2005 —

*Chamberlain, Hrdlicka, White, Williams & Martin, Richard N. Hubert,* for appellant.
*Carl L. Meyer,* for appellee.